**Alfred PEDRO, Respondent,**

v.

**Carl PEDRO, Jr., Eugene Pedro and the Pedro Companies, Appellants.**

**No. C6–90–814.**

Court of Appeals of Minnesota.

Nov. 20, 1990.

Review Denied Jan. 24, 1991.

Roger A. Christianson, Russell J. Jensen, Russell J. Jensen, P.A., St. Paul, for appellants.

John Paul Martin, Margaret M. Leighton, Peterson, Tews & Squires, Steven A. Clapp, Minneapolis, for respondent.

Considered and decided by SCHUMACHER, P.J., and PARKER and KLAPHAKE, JJ.

## OPINION

PARKER, Judge.

Respondent Alfred Pedro commenced this action against appellants Carl Pedro, Jr., Eugene Pedro and the Pedro Companies (TPC), seeking dissolution of TPC; appointment of a receiver; damages for lost wages; infliction of emotional distress and slander; and an award of attorney fees. Appellants counterclaimed for breach of fiduciary duty, mismanagement and waste of corporate property. The trial court submitted the controversy to the jury as a buyout of respondent's shares of stock in TPC. The jury found the Stock Retirement Agreement to be valid and controlling of the buyout price for respondent's stock. The jury also awarded respondent a total of $756,740 in damages for appellants' failure to deal openly, fairly and honestly with respondent and for wrongfully terminating respondent's employment. The trial court adopted the jury's findings and ordered judgment pursuant to the verdict. We vacate the judgment and remand.

## FACTS

Alfred, Carl and Eugene Pedro are brothers who each own a one-third interest in TPC, a closely held Minnesota corpora-

tion. All three brothers worked in the business for all or most of their adult lives and each brother, as an equal shareholder, received the same benefits and compensation. The three brothers entered into a Stock Retirement Agreement (SRA) which was designed to facilitate the purchase of a shareholder's stock upon his death or if a living shareholder wished to sell his stock. The SRA provides for a purchase price of the stock as follows:

> Until and unless changed the value of each share of stock shall be as follows: 75% of net book value at the end of the preceding calendar year. It is the intent of the parties that the value of a Stockholder's interest as herein determined does include good will.

Following Alfred Pedro's discovery of an apparent financial discrepancy of several hundred thousand dollars in the company's financial records, the relationship between the brothers began to deteriorate. He was placed on leave of absence and ultimately discharged from his employment with the company.

Prior to trial, the court denied Alfred's motion to amend his complaint to add a claim for punitive damages. His claims for infliction of emotional distress and slander were dismissed during trial.

Three issues were presented to the jury: (1) the validity of the SRA; (2) whether the individual appellants dealt openly, honestly and fairly with respondent; and (3) whether appellants wrongfully terminated respondent's employment. The jury determined that the SRA was valid and enforceable as to the parties. It found that appellants failed to act openly, honestly and fairly with respondent and awarded him damages of $500,000. The jury also found that respondent was wrongfully terminated and awarded him damages of $256,740 for lost wages. The trial court adopted the jury findings and ordered judgment in accordance with the verdict. Both parties brought post-trial motions, which the trial court denied.

## ISSUES

1. Did the trial court err in awarding damages based on the jury's finding that

appellants did not deal openly, fairly and honestly with respondent?

2. Did the trial court disregard the procedures for a buyout of shares of stock provided for by Minn.Stat. ch. 302A?

3. Did the trial court err in awarding respondent damages for wrongful termination of employment?

4. Did the trial court err in refusing to award respondent attorney fees?

## DISCUSSION

█ We remand to the trial court because all matters decided were for the court's, not the jury's, determination. The trial court may use the jury's findings as advisory only. Minnesota law permits an advisory jury to be impaneled in a case such as this. Minn.R.Civ.P. 39.02. In such actions tried with an advisory jury, the court has the responsibility for finding the facts. Minn.R.Civ.P. 52.01. An advisory jury, as the name implies, advises the court and "its findings are merely to reinforce the court's own decision on the disputed facts—not to supplant it." *In re Estate of Murphy*, 269 Minn. 393, 404, 131 N.W.2d 220, 227 (1964).

The trial court stated that it adopted the jury's findings. We conclude that it was error for the court merely to adopt the jury findings and verdict. The trial court must view the findings as advisory only and make appropriate findings independent of the jury.

## I

█ The jury awarded respondent $500,000 as damages based solely on its finding that appellants did not deal openly, fairly and honestly with respondent. The Minnesota Supreme Court recognizes that the relationship between shareholders in a closely held corporation is analogous to that of partners. *Westland Capitol Corp. v. Lucht Engineering, Inc.*, 308 N.W.2d 709, 712 (Minn.1981). Each shareholder owes the others a fiduciary duty. *Evans v. Blesi*, 345 N.W.2d 775, 779 (Minn.App. 1984).

█ Whether damages may be awarded for breach of fiduciary duty must, in this case, be determined by a threshold question: was there a difference between the fair value of respondent's shares of stock in the company and the amount he would receive in a buyout under the SRA? If the fair value of the shares is greater than the purchase price for the buyout as calculated from the formula in the SRA, the difference is the measure of respondent's damage resulting from having been forced to sell his shares in the company. Inasmuch as appellants' breaches of fiduciary duty forced the buyout, they cannot benefit from wrongful treatment of their fellow shareholder and must disgorge any such gain. We order the $500,000 award to be set aside as not supported by the findings and remand for the trial court to award damages for breach of fiduciary duty if it finds that the evidence shows the fair value of the shares to have been greater than the buyout price under the SRA.

## II

█ Appellants argue that the trial court disregarded the buyout procedures provided for by Minn.Stat. § 302A.751. We reject this contention and hold that the trial court proceeded correctly in applying Minn. Stat. § 302A.751, subd. 3a, which grants to the trial court equitable authority in disputes arising in closely held corporations.

Minority shareholders in a closely held corporation are in a vulnerable position. *Westland Capitol Corp.*, 308 N.W.2d at 712; Olson, *Statutory Changes Improve Position of Minority Shareholders in Closely Held Corporations*, Hennepin Lawyer, Sept.–Oct. 1983, at 10. Minn.Stat. § 302A.751 provides the flexibility for a trial judge to exercise a broad grant of equitable authority. "The courts should be left with as much flexibility as possible to provide an adequate remedy for the case before them." Olson, at 12.

[T]he focus of efforts to extricate the non-controlling shareholder should be on the power of the courts to order corporations to end oppressive and unfair prac-

tices. The courts should be given broad discretion to be employed liberally.

*Id.* at 10 (quoting Report of the Committee on Close Corporations to the Advisory Task Force on Corporation Law 17 (Feb. 12, 1980)). Minn.Stat. § 302A.751 (1990) authorizes equitable relief for minority shareholders in a closely held corporation. As Professor Olson says,

[t]he section is remedial in nature and should be liberally construed as an addition to the rights afforded non-controlling shareholders by law and the corporation's governing documents. The broad scope of Section 751 reflects the Legislature's trust in the ability of the judiciary to achieve equitable results on the facts appearing in individual cases.

Olson, at 11 (footnote omitted). Subdivision 3a was added in 1983 to strengthen the equitable relief for mistreatment of minority shareholders in closely held corporations. Olson, at 10.

Minn.Stat. § 302A.751 provides the courts with broad equitable authority to protect the rights and reasonable expectations of minority shareholders in closely held corporations. As Professor Olson points out, the primary expectations of minority shareholders include an active voice in management of the corporation and input as an employee. Olson, at 18.

III

■ The jury awarded respondent $256,740 for lost wages due to his wrongful termination. This award was based upon the present value of respondent's future wages (assuming a 15 percent interest rate) had he been employed continuously from the date of his termination to age 72 at the same salary, plus an annual increase of 4.5 percent (assuming increased compensation at roughly the rate of inflation).

Appellants argue that the evidence was insufficient to submit any claim of wrongful termination to the jury, because respondent's employer-employee relationship with TPC was terminable at the will of either party. The jury found that respondent had a reasonable expectation of employment with TPC until age 72 and was therefore wrongfully terminated.

Minnesota law has long established that when the duration of employment is for an indefinite term, the employment is "at-will." *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 627 (Minn.1983). In *Mettille,* however, the supreme court explained that the intent of the parties to the employment contract must also be ascertained to determine if the employment relationship may be terminated "at-will." *Id.* at 628. This court has held that in ascertaining the employment relationship, courts must consider the written and oral negotiations of the parties as well as the parties' situation, the type of employment, and the particular circumstances of the case. *Eklund v. Vincent Brass & Aluminum Co.,* 351 N.W.2d 371, 376 (Minn.App.1984), *pet. for rev. denied* (Minn. Nov. 1, 1984). In a closely held corporation the nature of the employment of a shareholder may create a reasonable expectation by the employee-owner that his employment is not terminable at will.

■ Appellants also argue that special interrogatory #5 submitted to the jury was prejudicial and misleading. This interrogatory asked: "Was there an expectation that plaintiff would be employed by the Pedro Companies until he voluntarily retired?" Appellants argue that this language erroneously suggests that the mere expectation by respondent that he would have lifetime employment with TPC was a sufficient basis for the jury to find that his termination had been wrongful. Appellants contend that the word "agreement" should have been used instead of the word "expectation." Under Minnesota law, however, the reasonable expectations of the shareholders are considered in granting relief involving closely held corporations. Minn.Stat. § 302A.751, subd. 3a, provides:

In determining whether to order equitable relief, dissolution, or a buy-out, the court shall take into consideration the duty which all shareholders in a closely held corporation owe one another to act in an honest, fair, and reasonable manner in the operation of the corporation *and the reasonable expectations of*

*the shareholders* as they exist at the inception and develop during the course of the shareholders' relationship with the corporation and with each other.

(Emphasis supplied).

Appellants argue that there is no precedent for awarding a minority shareholder damages for lost wages following his buyout. The trial court had evidence before it that Alfred Pedro had two separate property rights in the family company: (1) employment with TPC until voluntary retirement; and (2) a one-third share in the ownership of TPC. His shareholder interest will be destroyed by the buyout. The trial court must decide if that fact has any impact on his right of employment until retirement.

### IV

█ Minn.Stat. § 302A.751, subd. 4, provides:

If the court finds that a party to a proceeding brought under this section has acted arbitrarily, vexatiously, or otherwise not in good faith, it may in its discretion award reasonable expenses, including attorneys' fees and disbursements, to any of the other parties.

In applying this statute, the trial court must make two findings before it may award attorney fees. It must first find there was a breach of fiduciary duty. If so, then the court must find that the breaching party acted "arbitrarily, vexatiously, or otherwise not in good faith." If such facts are found, Minn.Stat. § 302A.751, subd. 4, provides that it is then within the trial court's discretion to award attorney fees to the injured party. The Minnesota Supreme Court has stated often that the allowance of attorney fees rests within the trial court's discretion. *In re Estate of Balafas*, 302 Minn. 512, 516, 225 N.W.2d 539, 541 (1975). If, upon remand, the court finds that a party to this action acted vexatiously or not in good faith, the trial court, in the exercise of sound discretion, may award attorney fees.

### DECISION

We remand for the trial court to make findings independent of those of the jury. The trial court may use the jury's findings as advisory only.

We vacate the award of damages for breach of fiduciary duty based solely on the jury's finding that appellants did not deal openly, fairly and honestly with respondent. We remand for the trial court to award damages for breach of fiduciary duty if the court finds that the fair value of respondent's stock is greater than the purchase price as calculated by the formula in the SRA. The measure of respondent's damage to his ownership interest would be that difference, if any. We also vacate the award of damages for wrongful termination of employment so that the trial court may make independent findings thereon.

Judgment vacated and remanded.