# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-2246

_____

| | | |
|---|---|---|
| William B. McCallum, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District |
| Rosen's Diversified, Inc., a | * | of Minnesota. |
| Minnesota Corporation, | * | |
| | * | |
| Defendant-Appellee, | * | |
| | * | |
| Ludwig M. Rosen, individually; | * | |
| Elmer H. Rosen, individually; Thomas | * | |
| J. Rosen, individually; Rosen's | * | |
| Diversified, Inc., sued as "Rosen's | * | |
| Diversified, Inc. Employee Stock | * | |
| Ownership Plan and Trust"; Ludwig M. | * | |
| Rosen; Elmer H. Rosen; Thomas J. | * | |
| Rosen; Richard Rosen; Robert Hovde; | * | |
| Jane Doe; David Roe; Sally Roe, whose | * | |
| true and correct names are unknown but | * | |
| who are, upon information and belief | * | |
| Administrators, Fiduciaries and | * | |
| Trustees of the Rosen's Diversified, Inc., | * | |
| Employee Stock Ownership Plan and | * | |
| Trust; Steven Roe; Roe Corporation, | * | |
| whose true and correct names are | * | |
| unknown as named fiduciaries of the | * | |
| Rosen's Diversified, Inc. Employee | * | |
| Stock Ownership Plan and Trust, | * | |
| | * | |

Defendants.                    *

_____

Submitted: June 11, 1998
Filed: August 19, 1998

_____

Before BEAM, ROSS, and MAGILL, Circuit Judges.

_____

BEAM, Circuit Judge.

William B. McCallum, a minority shareholder in Rosen's Diversified, Inc. (RDI), appeals from two adverse grants of summary judgment. McCallum seeks to have his shares in RDI redeemed for fair value pursuant to a court ordered buy-out. The district court held that McCallum failed to present evidence showing that RDI acted unfairly prejudicial toward him. We reverse and remand for a determination of the fair value of McCallum's shares.

## I.    BACKGROUND

This case involves a contentious dispute between the minority and controlling shareholders of a closely held Minnesota corporation. Two brothers, Elmer and Ludwig Rosen, founded RDI as a livestock trading business in the late 1940's. Today, RDI has grown into a thriving company, primarily engaged in meat packing and other agricultural businesses. In 1992, RDI had more than $400 million in sales. Members of the Rosen family own a majority of RDI's outstanding capital stock.

In January 1984, RDI hired McCallum, who had previously provided legal services to the company, as Executive Vice President and Chief Executive Officer (CEO). He was named a director in 1986. RDI performed well under McCallum's command. Accordingly, RDI rewarded McCallum—and three other key

employees—with a bonus of $186,815 in cash and 12,000 shares of common stock in the company.[1] According to RDI, these payments were made because the key employees were almost entirely responsible for the financial success of the corporation, because the compensation package of the employees had been artificially low, and in order to maintain the unswerving loyalty of these employees. The parties did not enter into a shareholder's agreement or provide any mechanism for the transfer of those shares if circumstances changed.

By 1991, the amiable relationship between McCallum and RDI deteriorated, ultimately resulting in McCallum's termination and removal from the board. Subsequently, McCallum proposed that RDI redeem his shares for $5 million. RDI responded with an offer to redeem the shares for $600,000, which was at a small premium over the value determined by the annual valuation for RDI's Employee Stock Ownership Program (ESOP). The parties could not agree on a price and extensive litigation has followed. See, e.g., McCallum v. Rosen's Diversified, Inc., 41 F.3d 1239 (8th Cir. 1994). The present case involves McCallum's 12,000 shares of RDI common stock which is not contained in the ESOP.

McCallum alleges that RDI's controlling shareholders have acted unfairly prejudicial toward him because they: (1) undermined his authority as CEO; (2) excluded him from important company decisions; (3) engaged in conduct directed at minimizing the value of the company; (4) terminated his employment; (5) offered to redeem his shares at an artificially low price; (6) denied him access to company books, records, and financial information; (7) engaged in self-dealing, usurped company opportunities, and commingled personal ventures with the affairs of the company.

---

[1]During the course of his employment, McCallum also received approximately 3,300 shares of common stock in RDI through an Employee Stock Ownership Program (ESOP). McCallum's total ownership represented nearly 3% of the company's capital stock.

The district court dismissed many of McCallum's allegations as improperly pleaded derivative claims. The district court dismissed McCallum's request for a buy-out of his stock on a subsequent motion for summary judgment. McCallum appeals.

## II. DISCUSSION

Minnesota law governs the substantive issues in this diversity action. See Vrban v. Deere & Co., 129 F.3d 1008, 1009 (8th Cir. 1997). We give no deference to the district court's interpretation of Minnesota law. See id. The Supreme Court of Minnesota has not confronted the issue of when a minority shareholder is entitled to a court ordered buy-out. Thus, "we must determine what that court would probably hold were it to decide the issue. In making this determination, we may consider relevant state precedent, analogous decisions, considered dicta, scholarly works and any other reliable data" Farr v. Farm Bureau Ins. Co., 61 F.3d 677, 679 (8th Cir. 1995).

The district court erred in dismissing certain of McCallum's allegations as failing to observe the derivative pleading requirements for shareholder proceedings. McCallum's several assertions were merely examples of unfairly prejudicial conduct on the part of the controlling shareholders, not separate claims in and of themselves. McCallum sought no relief on behalf of the corporation. Cf. PJ Acquisition Corp. v. Skoglund, 453 N.W.2d 1, 6 (Minn. 1990) (inferring that a shareholder action for equitable relief is not a derivative action). In any event, we find that McCallum is entitled to equitable relief based on the uncontroverted assertions that were not dismissed as derivative claims.

Concerned with the vulnerable position of minority shareholders in closely held corporations, the Minnesota legislature has provided the courts with broad equitable authority to protect the interests of minority shareholders. See Minn. Stat. § 302A.751 (amended 1994) (hereinafter "Section 751"). Section 751 provides for the buy-out of a minority shareholder's interest when "the directors or those in control of the

corporation have acted in a manner unfairly prejudicial toward one or more shareholders in their capacities as shareholders or directors . . . or as officers or employees of a closely held corporation."

The phrase "unfairly prejudicial" is to be interpreted liberally. See Pedro v. Pedro, 463 N.W.2d 285, 288-89 (Minn. Ct. App. 1990). One commentator, who helped draft certain revisions to the Minnesota Business Corporation Act and Section 751, stated that:

> The section is remedial in nature and should be liberally construed as an addition to the rights afforded non-controlling shareholders by law and the corporation's governing documents. The broad scope of Section 751 reflects the Legislature's trust in the ability of the judiciary to achieve equitable results on the facts appearing in individual cases.

See Joseph Edward Olson, Statutory Changes Improve Position of Minority Shareholders in Closely Held Corporations, The Hennepin Lawyer, Sept.-Oct. 1983, at 11. In deciding whether to order a buy-out, the courts should consider "the reasonable expectations of the shareholders" with respect to each other and the corporation. See Minn. Stat. § 302A.751, subd. 3a (amended 1994). Oftentimes, a shareholder's reasonable expectations include a significant voice in management and an opportunity to work. See Olson at 23.

We find that the uncontested facts demonstrate that McCallum's reasonable expectations were defeated. RDI terminated McCallum's employment as CEO and subsequently offered to purchase his RDI shares at a small premium over the value determined by an annual valuation for RDI's ESOP. McCallum had received these shares as compensation for his outstanding service and as an inducement to remain at RDI, in order to foster its continued growth. Although the employment relationship

later deteriorated, our focus is on McCallum's reasonable expectations at the inception of the relationship.  See Minn. Stat. §302A.751, subd. 3a.

On his termination, McCallum was divested of his primary expectations as a minority shareholder in RDI—an active role in the "management of the corporation and input as an employee." Pedro, 463 N.W.2d at 289.  This expectation was particularly reasonable since McCallum was CEO of RDI.  We need not extend our holding as far as the Minnesota Court of Appeals, which held that controlling shareholders that terminate the employment of a minority shareholder must make a good-faith effort to buy out the shareholder at a fair price.  See Sawyer v. Curt & Co., 1991 WL 65320, at *2 (Minn. Ct. App. Feb. 12, 1991) (publication order vacated).  We simply hold that terminating the CEO—as opposed to an employee that did not have a significant role in management—and then offering to redeem his stock, which was issued partially to lure him to remain at the company, constituted conduct toward McCallum as a shareholder sufficient to invoke the requirements of the Minnesota Act.  Accordingly, we remand the matter for a determination of the fair value of his stock.

On remand, the district court shall determine the fair value of McCallum's shares in accordance with Minn. Stat. § 302A.751, subd. 2 (amended 1994) and put an end to this pugnacious litigation.  We express no opinion on the fair value of McCallum's shares or whether the ESOP valuation represents fair value.

## III.  CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.