*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0793**

Joy Folie,
Respondent,

vs.

Aging Joyfully, Inc., et al.,
Appellants.

**Filed May 4, 2015
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27CV1221883

Gary L. Huusko, Dakota Law, P.L.L.C., Lakeville, Minnesota (for respondent)

John M. Mulligan, John F. Mulligan, Mulligan & Bjornnes, P.L.L.P., Minneapolis, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Hudson, Judge; and Reyes, Judge.

# UNPUBLISHED OPINION

**REYES**, Judge

This appeal arises from a shareholder dispute in which respondent obtained judgment against appellants for wrongful termination, breach of fiduciary duty, and unfairly prejudicial conduct under Minn. Stat. § 302A.751 (2014). Appellants assert that the district court abused its discretion by (1) awarding equitable relief to respondent;

(2) awarding attorney fees; and (3) holding individual appellants personally liable. We affirm.

## FACTS

Over the course of eight years, respondent Joy Folie and appellant Joy Hansen worked together at the Veterans Administration hospital. Based on their good working relationship, the two began plans to open their own residential-care facility for seniors. Joy Hansen's husband, appellant Ken Hansen, approached his brother and sister-in-law, appellants John and Rahkel Hansen, his mother, appellant Myrt Hansen, and his aunt and her husband, appellants Merna and Howard Smith, to invest in the start-up business.

On January 17, 2006, respondent and the individual appellants formed appellant Aging Joyfully Incorporated (AJI). Respondent invested $75,000 and received 20,000 shares for a 20% ownership stake. The remaining 80,000 shares were divided equally among the following four investor groups, which each invested $75,000: (1) Ken and Joy Hansen; (2) John and Rahkel Hansen; (3) Myrt Hansen; and (4) Merna and Howard Smith. Howard Smith passed away in 2011, and his shares were transferred to his surviving spouse, Merna Smith. Respondent was the only person unrelated to the Hansens with any ownership stake in AJI.

At AJI's initial shareholders meeting, respondent and all the individual appellants were elected to the board of directors. Joy Hansen was elected as president and secretary, and respondent was elected as vice-president and treasurer. From the outset of AJI's operations, respondent was employed as AJI's administrator and Joy Hansen was

2

employed as a registered nurse. Both women were involved in the day-to-day management of AJI.

AJI's bylaws require a minimum of 10 days' notice to every shareholder before any shareholder meeting. The bylaws specify that waiver of the notice requirement shall be provided in writing or by attendance at the meeting. The bylaws also provide that a quorum only exists if a shareholder meeting is attended by "[a]ll of the outstanding shares of the Corporation entitled to vote, represented in person or by proxy." Absent attendance by all shareholders, no quorum exists and no official business can be transacted. Similarly, the bylaws require 10 days' notice of any board meeting to all directors and the presence of all directors for a quorum. The board of directors can only act upon the majority vote of the directors taken at a meeting when a quorum is present. The bylaws allow for the removal of a director upon a shareholder vote, but only at a duly called special meeting or annual meeting, both of which require a 10-day notice and a quorum to take any action.

In February 2006, respondent and the individual appellants met with AJI's corporate counsel to discuss the terms of a Buy-Sell Agreement governing the redemption of shares from AJI's shareholders. An agreement was circulated to the parties but was not signed.

Since its formation, AJI has owned and operated a 10-bed assisted-living facility. In 2009, the working relationship between respondent and Joy Hansen began to deteriorate. The conflict persisted, and during a July 2011 shareholder and director

meeting, it was suggested that the two mediate their dispute. The parties participated in mediation but failed to resolve their conflict.

At a board meeting held on July 30, 2011, Ken Hansen informed all of the shareholders that they had never signed the Buy-Sell Agreement presented in 2006. Ken Hansen presented the 2011 Buy-Sell Agreement, representing that it was the same as the 2006 version except for a change relating to the purchase of shares by a surviving spouse in the event of a death. But the two agreements contained other significant differences, including the addition of section 5.3.3., which allows the termination of a shareholder's employment upon the unanimous agreement of the other shareholders and states that such termination can occur with or without cause.

AJI held an annual shareholder meeting on March 25, 2012. During that meeting, appellants discussed the deteriorating relationship between respondent and Joy Hansen. The minutes of the meeting read:

> All agreed a change is required. With no feasible alternatives, the following three options were identified: 1) Find a buyer and sell the business; 2) Joy Hansen end employment; or 3) Joy Folie end employment.
>
> Note: Ending employment does not require [AJI] shares to be sold.
>
> Joy Folie suggested ending her employment would be appropriate. She requested time to think about the decision. She agreed the end of April was enough time.

On April 21, 2012, Ken Hansen emailed copies of the minutes to all the shareholders. Respondent responded the next day and stated, "To clarify the Personnel Issue, I said I would consider a buy-out. I have no intention of being a passive investor." On

4

May 8, 2012, respondent sent a second email to appellants, again asserting that she did not offer to resign at the March 25 meeting and inquiring as to whether appellants were trying to terminate her employment. The next day, respondent sent a third email explaining that she had not resigned but would be willing to do so if there was an agreement regarding the redemption of her shares. Two days later, respondent offered to redeem her 20% stake in AJI for $255,800. Ken Hansen, on behalf of appellants, rejected this offer and made a counter-offer of $53,625, which respondent rejected.

On May 24, 2012, the individual appellants and AJI's corporate attorney held a meeting that was not called in accordance with AJI's bylaws. Respondent was not given notice of the meeting, and she did not attend or send a proxy. During this meeting, appellants determined that respondent had resigned during the March 25 meeting. The minutes made no mention of respondent's emails to the contrary. The following day, respondent was escorted from AJI's facility.

Respondent commenced this action in November 2012. In February 2013, respondent filed a motion for equitable relief under Minn. Stat. § 302A.751. In March 2013, appellants filed a motion for redemption of respondent's shares under Minn. Stat. § 302A.751. The district court ordered the parties to seek appraisal of respondent's shares. In September 2013, the district court received confirmation that the parties had resolved the portion of the case regarding the valuation of the shares and appellants paid respondent $42,445.50 for her 20% stake. An evidentiary hearing was held, and the district court awarded respondent lost compensation plus interest from the period of May 25, 2012 to September 30, 2013. The district court also awarded attorney fees to

5

respondent. Appellants filed a motion for a new trial or amended findings, which was denied. In May 2014, the district court issued an order for judgment awarding $83,342.03 in damages for lost compensation. This appeal follows.

## D E C I S I O N

Appellants argue that the district court abused its discretion by (1) determining that respondent was entitled to equitable relief under section 302A.751; (2) awarding attorney fees; and (3) holding the individual appellants jointly and severally liable. We discern no error.

## I. Equitable relief

"This court will reverse a district court's equitable remedy only if the district court abuses its discretion. A district court abuses its discretion if its decision is against the facts in the record or if its ruling is based on an erroneous view of the law." *State ex rel. Swan Lake Area Wildlife Ass'n v. Nicollet Cnty. Bd. of Cnty. Comm'rs*, 799 N.W.2d 619, 625 (Minn. App. 2011) (citations and quotations omitted). A district court's "findings of fact shall not be set aside unless clearly erroneous," and when reviewing the district court's findings, "this court is limited to deciding whether the findings are clearly erroneous." *Pedro v. Pedro*, 489 N.W.2d 798, 801 (Minn. App. 1992) (quotation omitted), *review denied* (Minn. Oct. 20, 1992) (*Pedro II*). "Clearly erroneous means manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id.* (quotation omitted). In Minnesota, "[w]hether a shareholder's reasonable expectations have been frustrated is essentially a fact issue." *Gunderson v. Alliance of Computer Prof'ls, Inc.*, 628 N.W.2d 173, 184 (Minn. App. 2001), *review*

6

*granted* (Minn. July 24, 2001), *appeal dismissed* (Minn. Aug. 17, 2001). "[W]e review the district court's factual findings for clear error. . . . To conclude that findings of fact are clearly erroneous we must be left with the definite and firm conviction that a mistake has been made." *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013) (quotations and citations omitted).

Appellants argue that the district court abused its discretion by determining that respondent was entitled to equitable relief under section 302A.751. The Minnesota Business Corporation Act (MBCA) provides, in relevant part, that a district court "may grant any equitable relief it deems just and reasonable in the circumstances" if it is established that the "directors or those in control of the corporation" have acted (1) in a manner "unfairly prejudicial" or (2) in breach of their fiduciary duty to act in an "honest, fair, and reasonable manner in the operation of the corporation and the reasonable expectations of all shareholders." Minn. Stat. § 302A.751, subd. 1(b)(3), 3a.

### A.    Unfairly prejudicial manner

Unfairly prejudicial conduct is "conduct that frustrates the reasonable expectations of all shareholders." *Gunderson*, 628 N.W.2d at 184 (Minn. App. 2001). The district court ruled both that appellants acted in a manner unfairly prejudicial because respondent had a reasonable expectation of continued employment and that appellants failed to deal openly, honestly, fairly, and in good faith with respondent. Appellants allege that they could not act in a manner unfairly prejudicial because respondent did not have a reasonable expectation of continued employment. Appellants argue that the district court's ruling is inconsistent with the record because the 2011 Buy-Sell Agreement

7

removes any expectation for continued employment: "A Shareholder may not be terminated from an employment position with the Company unless all other Shareholders agree unanimously to do so. *Such termination may be with or without cause*." (Emphasis added.)

Shareholder-employees of a closely held corporation "commonly have an expectation of continuing employment" and, therefore, discharge of a shareholder-employee may be grounds for equitable relief. *Gunderson*, 628 N.W.2d at 189. In determining whether an expectation of continued employment exists and is reasonable, "courts may rely on written or oral agreements among shareholders or between shareholders and the corporation" *Id*. at 185. Written agreements "carry great weight in determining a shareholder's reasonable expectations." *Regan v. Natural Res. Group, Inc.*, 345 F. Supp. 2d 1000, 1012 (D. Minn. 2004) (applying Minnesota state law); *see also* Minn. Stat. § 302A.751, subd. 3a ("[A]ny written agreements . . . between or among shareholders . . . are presumed to reflect the parties' reasonable expectations.").

Despite the "great weight" usually accorded to written agreements, *Regan* 345 F.Supp.2d at 1012, we have also held that they "are not dispositive of shareholder expectations in all circumstances," and that shareholder expectations often "arise from understandings that are not expressly stated in the corporation's documents." *Gunderson*, 628 N.W.2d at 186. We have further noted that, in a closely held corporation, the "nature of the employment" can create a reasonable expectation that the employment is not terminable at will. *Pedro v. Pedro*, 463 N.W.2d 285, 289 (Minn. App. 1990), *review denied* (Minn. Jan. 24, 1991) (*Pedro I*). Such is the case here.

8

Ken Hansen's own minutes indicate that respondent did not agree to terminate her employment at the March 25 meeting and instead reflect that she needed time to consider that option. Respondent sent three follow-up emails reiterating her stance that she was not terminating her employment. In addition, it is undisputed that the subsequent May 24 meeting was not called in accordance with the bylaws. Without providing notice to respondent and without respondent's presence or proxy, appellants held a meeting where they determined, on their own, that respondent had resigned on March 25, 2012. But because respondent was not given proper notice and was not afforded the opportunity to send a proxy according to the bylaws, no quorum was present, and no official business could take place. Moreover, appellants' reliance on the 2011 Buy-Sell Agreement is undercut by the stipulation that "Ken Hansen presented the Buy-Sell Agreement to the shareholders as the same as the 2006 Buy Sell Agreement version except for a change to section 4.1 relating to the purchase of shares by a surviving spouse in the event of death." As respondent points out, the language of section 5.3.3 on which appellants rely—"[s]uch termination may be with or without cause"—only appears in the 2011 version and not the 2006 version.[1] Accordingly, the district court did not clearly err in finding that appellants frustrated respondent's reasonable expectation of continued employment. *See Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999) ("If there is reasonable

---

[1] The 2011 version contained changes to other provisions of the agreement as well. Sections 5.1 and 5.2 of the 2006 version were deleted from the 2011 version. In addition, section 5.3 was heavily modified, including the removal of the shareholder's obligation to buy out a terminated shareholder's shares and replacing it with an option to purchase those shares.

9

evidence to support the [district] court's findings of fact, a reviewing court should not disturb those findings.").

Appellants next argue that the district court committed clear error by failing to acknowledge the parties' 2011 Buy-Sell Agreement. While it is true that the 2011 Buy-Sell Agreement goes unmentioned in the district court's final order, the agreement was extensively discussed in the parties' briefs to the district court and during the hearing. The district court had a variety of evidence before it as to whether respondent was an at-will employee or had a reasonable expectation of continued employment. The fact that it found respondent's evidence more persuasive does not constitute clear error. *Fletcher*, 589 N.W.2d at 101 ("It is not the province of this court to reconcile conflicting evidence. On appeal, a [district] court's findings of fact are given great deference, and shall not be set aside unless clearly erroneous.").

We note that, while more discussion on the 2011 Buy-Sell Agreement might have been beneficial, such a discussion was not necessary because the 2011 Buy-Sell Agreement was not implicated in this matter. It is true that section 5.3.3 of the 2011 Buy-Sell Agreement allows for shareholder termination upon unanimous agreement of the other shareholders. Moreover, section 13.14 of the agreement allows for the provisions of the 2011 Buy-Sell Agreement to supersede the provisions of the bylaws when the two conflict. But here, there is no conflict between the two. The 2011 Buy-Sell Agreement is silent on the required procedures prior to taking any corporate action. Those procedures are instead laid out in AJI's bylaws, which state that official business can only be conducted after 10 days' notice to every shareholder and when a quorum is present, and a

10

quorum is present only if the meeting is attended by "[a]ll of the outstanding shares of [AJI] entitled to vote, represented in person or proxy." Therefore, before any action under the Buy-Sell Agreement on termination can take place, the bylaws first dictate that such action can only occur if a quorum is present and proper notice has have been provided. It is undisputed that those procedures were not followed.

### B. Fiduciary duty

The fiduciary duty that exists between shareholders of a close corporation is based both in statute and the common law. *Berreman v. West Publ'g Co.*, 615 N.W.2d 362, 369 (Minn. App. 2000), *review denied* (Minn. Sept. 26, 2000) (concluding that the common-law fiduciary duty between shareholders exists separately and distinctly from the requirements of the MBCA). The MBCA describes the fiduciary duty in section 302A.751, subdivision 3a, which states that when "determining whether to order equitable relief," the district court must:

> take into consideration the duty which all shareholders in a closely held corporation owe one another to act in an honest, fair, and reasonable manner in the operation of the corporation and the reasonable expectations of all shareholders as they exist at the inception and develop during the course of the shareholders' relationship with the corporation and with each other.

Minn. Stat. § 302A.751, subd. 3a. The common law has also described this duty, reasoning that because the relationship among shareholders in closely held corporations is analogous to that of partners, "the law imposes upon them highest standards of integrity and good faith in their dealings with each other." *Prince v. Sonnesyn*, 222 Minn. 523, 535, 25 N.W.2d 468, 472 (1946) (quotation omitted); *see also Westland*

11

*Capitol Corp. v. Lucht. Eng'g Inc.*, 308 N.W.2d 709, 712 (Minn. 1981) (describing a close corporation as "a partnership in corporate guise"). Thus, under the common law, shareholders have "a fiduciary duty to deal openly, honestly and fairly with other shareholders." *Evans v. Blesi*, 345 N.W.2d 775, 779 (Minn. App. 1984), *review denied* (Minn. June 12, 1984). The common-law fiduciary duty between shareholders is frequently referred to as a "duty of good faith and fair dealing." *Gunderson*, 628 N.W.2d at 185; *see also Pedro II*, 489 N.W.2d at 801 ("In a fiduciary relationship the law imposes upon [shareholders the] highest standards of integrity and good faith in their dealings with each other.") (quotation omitted). "Whether a fiduciary duty has been breached generally is a question of fact." *Berreman*, 615 N.W.2d at 367.

The district court's findings show that under either the statutory or the common-law definition, the appellants breached their fiduciary duty. Appellants deny that they breached any fiduciary duty to respondent, and instead argue that respondent breached her fiduciary duty to appellants. Specifically, appellants argue that it was not "fair and equitable" for respondent to propose a redemption price of $255,800. We disagree. In 2011, AJI hired an appraiser who calculated AJI's "going concern value" as $1,279,000. The Minnesota Supreme Court has held that "fair value, in ordering a buy-out under the [MBCA], means the pro rata share of the value of the corporation as a going concern." *Advanced Commc'n Design, Inc. v. Follett*, 615 N.W.2d 285, 290 (Minn. 2000). Because respondent's initial figure of $255,800 reflected 20% of the going concern value provided by AJI's own appraiser, it cannot be said that respondent breached any fiduciary duty of good faith and fair dealing.

12

It is undisputed that appellants failed to follow the notice requirements mandated by the bylaws. Moreover, appellants failed to respond to any of respondent's emails regarding her employment status even though appellants' own meeting minutes indicate that respondent still believed she was employed. And, as discussed previously, appellants' reliance on the 2011 Buy-Sell Agreement is unsupported. Accordingly, the district court's finding that appellants breached their fiduciary duty is not "manifestly contrary to the weight of the evidence" and therefore not clearly erroneous. *Lyon*, 304 Minn. at 201, 229 N.W.2d at 524.

## II. Attorney fees

Appellants next argue that the district court abused its discretion with regard to the award of attorney fees. In awarding attorney fees, the district court stated that appellants acted arbitrarily when they failed to follow corporate formalities and wrongfully terminated respondent. The MBCA allows the district court to award attorney's fees "[i]f the [district] court finds that a party to a proceeding brought under this section has acted arbitrarily, vexatiously, or otherwise not in good faith." Minn. Stat. § 302A.751, subd. 4. In awarding attorney fees, the district court must find that: (1) there was a breach of a fiduciary duty and (2) the breaching party acted "arbitrarily, vexatiously, or otherwise not in good faith." *See Pedro I*, 463 N.W.2d at 290. Because we have already determined that the district court's first finding that appellants breach their fiduciary duty to respondent was not clearly erroneous, this section will focus solely on the second issue.

Appellants contend that they did not act "arbitrarily, vexatiously, or otherwise not in good faith" because: (1) their May 2012 redemption offer was higher than what was

13

later determined to be the worth and (2) the bulk of the fees were incurred in arguing about the value of the shares. Neither argument is relevant to whether appellants acted arbitrarily when they failed to follow their own bylaws. Because appellants have offered no explanation as to why the bylaws were not followed during the May 24 meeting, the district court was well within its discretion in concluding that their actions were arbitrary and otherwise not in good faith. *See id* ("The Minnesota Supreme Court has stated often that the allowance of attorney fees rests within the trial court's discretion.").

### III. Joint and several liability

Lastly, appellants argue that the district court abused its discretion when it held that the individual appellants were jointly and severally liable. Our opinion in *Pedro II* is instructive on this issue. In *Pedro II*, we acknowledged that appellant had waived the opportunity to challenge the joint- and several-liability issue, but noted that, "[i]n any event, Minn. Stat. § 302A.751 allows a trial court to grant any equitable relief it deems just and reasonable under the circumstances. Appellants cite no authority that prohibits a trial court's ability to order joint and several[] liability." 489 N.W.2d at 803. The same can be said here. This conclusion is further supported by Minn. Stat. § 302A.251, subd. 4(b) (2014), which allows directors to limit their personal liability to shareholders for monetary damages resulting from a breach of fiduciary duty, except for "acts or omissions not in good faith." As we have previously discussed, appellants have breached their duty of good faith and fair dealing and thus Minnesota's personal liability limitations do not apply. Because district court has "broad equitable powers in

14

fashioning relief," it did not abuse its discretion in determining that the individual appellants are jointly and severally liable. *See Pedro II*, 489 N.W.2d at 803.

**Affirmed.**