Melvin E. EVANS, Respondent,

v.

Gordon L. BLESI, Appellant,

and

Blesi-Evans Co., Appellant.

No. CO-83-1471.

Court of Appeals of Minnesota.

Feb. 22, 1984.

Alan R. Nettles, Daniel B. Johnson, Minneapolis, for appellant.

Gordon L. Blesi, pro se.

Ernest A. Lindstrom, Robert W. Gislason, Edina, for respondent.

Heard, considered and decided by PARKER, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

PARKER, Judge.

This appeal arises from litigation between owners of a closely held corporation.

Plaintiff Melvin Evans and defendant Gordon Blesi were co-owners and shareholders of defendant Blesi-Evans Company. Evans and Blesi were the sole, equal shareholders from 1955 to 1977, when Evans transferred a share of stock to Blesi, thereby giving Blesi a majority interest. In 1982, Blesi, who was then president, demanded and received Evans' written resignation from employment and also Evans' written consent to certain changes in the corporate structure. Evans brought this action, claiming that he had acted under fraud and duress when he transferred the stock and resigned, alleging a breach of fiduciary duty by Blesi and seeking damages and equitable relief against both Blesi and Blesi-Evans Company.

The trial court empanelled an advisory jury which found that a fiduciary duty existed which Blesi had violated and awarded both compensatory and punitive damages to Evans. On June 30, 1983, the trial court adjudged the 1982 resignation and consents null and void, ordered Evans reinstated with full compensation to date of judgment, and awarded Evans compensatory damages of $277,000 jointly and severally against Blesi and Blesi-Evans Company, as well as punitive damages of $500,000 against Blesi individually. An attempt was made by the trial court to amend the judgment by a post-appeal order on October 4, 1983, reducing the punitive damages to $250,000 and vacating the order of reinstatement of Evans, together with other orders not necessary to be detailed here.

Defendants appeal from the judgment entered June 30, 1983, and as purported to be amended by order dated October 4, 1983.

We affirm in part, modify in part, vacate in part and remand to set up a mechanism for a buyout of the Blesi-Evans Company.

## FACTS

The facts deemed material to this decision are as follows. Evans and Blesi were co-owners and shareholders of Blesi-Evans Company, a manufacturer's representative for large heating and ventilating equipment makers. They were college classmates, close friends and business associates.

In 1953, the parties took jobs with the Albert C. Price Company, a manufacturer's representative business and predecessor of the Blesi-Evans Company. Within six or seven months, Mr. Blesi was discharged by Mr. Price. Later, Mr. Price sold his company to Mr. Evans and a man named Lloyd Steirly. Blesi wanted to come back into the business and so Steirly and Evans sold him 18 percent of their stock. The remaining stock was owned equally by Evans and Steirly.

In 1955, Evans and Blesi combined their 41 percent and 18 percent interests to vote out Steirly as president and director. Evans loaned Blesi enough money to enable Blesi to purchase 50 percent of the stock. They formalized their relationship on March 31, 1955, by entering into a shareholder's control agreement tantamount to a partnership agreement, and continued on an equal basis until 1977, sharing equal salaries, management duties and benefits.

Between 1975 and 1977, Mr. Evans had some health problems including high blood pressure, very high anxiety and tremors in his hands. Blesi claimed that Evans was making harmful ordering and pricing mistakes because of his illness. Blesi confronted Evans with the problems he perceived in Evans' job performance and told Evans that he was considering leaving or dissolving the company.

Evans testified that Blesi went into a temper tantrum and demanded that Evans sign certain stock transfer documents or he would liquidate the company and take all the accounts away. Evans transferred one share of stock to Blesi on November 21, 1977, thus surrendering majority control to him.

After the stock transfer, Evans and Blesi worked equal hours, drawing equal pay and benefits and sharing equally in the day-to-day management of the company. However, Blesi contended that Evans continued to make harmful ordering and pricing mistakes.

On February 8, 1982, Blesi consulted an attorney to discuss the "problem." Blesi was advised by the attorney to seek Evans' resignation before using his majority voting power to remove him, if necessary.

An associate of the law firm prepared documents of resignation and minutes of an informal action of shareholders which had the effect of consolidating Blesi's control by eliminating cumulative voting, lowering to "majority" the vote required for amending by-laws, and purporting to increase the authorized capital. This document was to be executed by both parties if Evans resigned voluntarily. Alternatively, the attorney prepared a notice of shareholders meeting to be called for the purpose of removing Evans as an officer, director and employee if he refused to resign.

On February 19, 1982, Blesi met with Evans. Evans testified that Blesi again shouted at him, slammed the door, accused him of incompetence and dishonesty, and threatened to fire Evans' son from the sales force if Evans did not resign voluntarily. Evans signed the resignation and the informal minutes that the attorney had drafted.

Three days after Evans signed the letter, he retained legal counsel who sent a notice of revocation of Evans' signature on the resignation and on the informal action of shareholders. Blesi contacted his attorneys, who advised him to ignore it.

Blesi followed this advice. Evans was not paid salary, was refused his annual bonus, and Blesi refused to make the $31,250 yearly contribution for Evans to the company's pension and profit-sharing trusts. Approximately one month in advance of the stock transfer meeting with Evans, Blesi had had documents prepared which empowered him to disqualify employees from eligibility for pension and profit-sharing payments if employment was terminated before the end of the fiscal year. On the last day of the company's fiscal year in 1982, after Evans' resignation in February, Blesi then invoked the disqualification clause and refused to make the payments.

On April 30, 1983, the advisory jury and the trial court independently found that Blesi had obtained the stock transfer, the resignation and the consents by "misrepresentation, intimidation, threat and duress" and that Blesi had breached a fiduciary duty toward Evans. The jury found and the trial court ordered $277,000 compensatory damages, to be awarded jointly and severally, against Blesi and Blesi-Evans Company, and further awarded $500,000 punitive damages against Blesi individually.

On August 19, 1982, the trial court heard oral arguments on post-trial motions. On September 29, 1983, while the motions were still under advisement, defendants filed a notice of appeal from the judgment of June 30, 1982. On October 4, 1983, the trial court signed an order reducing the punitive damages to $250,000 and setting aside Evans' reinstatement because the extreme acrimony resulting from the lawsuit would adversely affect corporate operations. All other motions by defendants were denied.

## ISSUES

1. Whether the evidence was sufficient to support the trial court's finding of fact that Gordon Blesi breached a fiduciary duty to Melvin Evans;

2. Whether the trial court, on June 30, 1983, awarded the proper amount of compensatory damages;

3. Whether the post-appeal order of the trial court is of any effect;

4. Whether the trial court made appropriate findings and whether the special verdict form was so defective that it was an error of law and abuse of discretion to enter judgment upon it; and

5. Whether the conduct of plaintiff's counsel during the trial was so extreme and prejudicial that appellants were deprived of a fair trial.

## ANALYSIS

This case involves two parties whose many years of friendship were inextricably intertwined with the operation of a very successful business. The litigation was bitterly fought, but the conflicts were only partially resolved by the trial court's judgment. At oral argument before this court, defense counsel suggested that it would be in the long-run interest of all concerned were we to put an end to the litigation. The appeal is to the plenary powers of the court to end the extensive and self-defeating litigation.

Rule 103.04 of the Minnesota Rules of Civil Appellate Procedure provide:

> The appellate courts may reverse, affirm or modify the judgment or order appealed from or take any other action as the interest of justice may require.
>
> On appeal from or review of an order the appellate courts may review any order affecting the order from which the appeal is taken and on appeal from a judgment may review any order involving the merits or affecting the judgment. They may review any other matter as the interest of justice may require.

■ Counsel suggested that Mr. Evans' salary be paid to the present and that a mechanism for a buyout of the corporation be established. Under the foregoing rule, we modify the award of Evans' salary to the time of trial by extending it up to the present, thus totalling $381,136, to be a joint and several award against Blesi and the Blesi-Evans Company.

■ On this appeal, we are presented with 13 assignments of error. It is not practical to consider each one separately, nor does each one require separate consideration. *Fewell v. Tappan*, 223 Minn. 483, 27 N.W.2d 648 (1947); *Prince v. Sonnesyn*, 222 Minn. 528, 25 N.W.2d 468 (1946).

1. The decisive question is whether the evidence was sufficient to support the trial court's finding of fact that Gordon Blesi breached a fiduciary duty to Melvin Evans. The evidence will be viewed in the light most favorable to the prevailing party, and the trial court's factual findings will not be overturned unless clearly erroneous. *Theisen's, Inc. v. Red Owl Stores, Inc.*, 309 Minn. 60, 243 N.W.2d 145 (1976).

■ Blesi and Evans were partners in a closely held corporation. Because of this, the relationship between them was fiduciary. The law imposes on each the highest standard of integrity in their dealings with each other. In an analogous case, *Fewell*, 223 Minn. at 494, 27 N.W.2d at 654, the Minnesota Supreme Court held that a shareholder in a closely held corporation has a fiduciary duty to deal openly, honestly and fairly with other shareholders.

In *Prince*, the Supreme Court put it thus:

> The relations between partners is essentially one of mutual trust and confidence, and the law imposes upon them highest standards of integrity and good faith in their dealings with each other.

222 Minn. at 535, 25 N.W.2d at 472.

■ Measured by that yardstick, Blesi's conduct toward Evans fell short.

The evidence showed that Blesi followed the same intimidating tactics in obtaining the majority share of stock in 1977 and in forcing the resignation in 1982. On both occasions, he did everything preparatory in secret, including conferences with lawyers

and advance preparation of legal documents.. On both occasions, Blesi approached Evans when everyone else had left the office for the day, shouted at him, slammed the door and made threats to dissolve the company and take all the business. Evans was afforded no opportunity to obtain the advice of counsel before signing the stock transfer or the letter of resignation.

The trial court stated in its memorandum that the verdict and judgment finding a breach of fiduciary duty by Blesi was based upon the abrasive and intimidating manner used by Blesi to accomplish the transfer of stock in 1977 and Evans' resignation in 1982. Based upon the above evidence, the trial court's finding was well supported.

2. On June 30, 1983, the trial court approved the advisory jury verdict of $277,-000 compensatory damages to Evans for his lost salary up to the time of trial. We modify the order to $381,136, awarded jointly and severally against Blesi and the Blesi-Evans Corporation, to compensate for lost salary up to the present.

3. The trial court also independently awarded in its June 30, 1983, order the sum of $500,000 as punitive damages against Blesi individually; this was identical with the advisory jury's verdict. However, in a post-appeal order dated October 4, 1983, the trial court ordered a remittitur of $250,-000 of the punitive damages because the damages appeared to have been given under the influence of passion or prejudice attributable to plaintiff's counsel.

Respondent contends that the post-appeal order of the trial court is null and void because the trial court had lost jurisdiction to this court once appellant filed a notice of appeal. We hold that the order of October 4, 1983, is of no effect.

The scheme of civil appellate rules reveals an apparent anomaly. Under Rule 28.02, subd. (4)(3) of the Minnesota Rules of Criminal Procedure, post-trial motions delay the start of the time period for taking an appeal from the judgment until entry of the order denying the motion. A similar provision does not exist in the Rules

of Civil Appellate Procedure. As a result, an order that is not really late, if entered after an appeal is taken, is of no effect. The jurisdiction over the subject matter of defendants' motions had shifted from the district court to the Court of Appeals at the time of filing of the notice of appeal on September 29, 1983. *Kath v. Kath,* 238 Minn. 120, 55 N.W.2d 691 (1952).

While the order is of no effect, we think the trial court was in a unique position to evaluate the effect of the alleged misconduct by plaintiff's counsel on the jury. We are taking cognizance of it for the insight it affords. As observed by the trial court, plaintiff's counsel's conduct may well have affected the award. Therefore we order, as the trial court attempted, that the punitive damages be reduced from $500,000 to $250,000.

4. Appellants also complain of the form of the special interrogatories submitted to the advisory jury. The assignments of error are numerous. Were this a jury verdict which the trial court might be bound to accept in the absence of perversity, it might be error requiring retrial. But, if the form of the special interrogatories was less than perfect, it is harmless because the trial court, in addition to adopting the answers of the advisory jury, also found independently the same facts on the same evidence. *Wormsbecker v. Donovan Const. Co.,* 251 Minn. 277, 87 N.W.2d 660 (1958). Therefore, we hold that the trial court made appropriate findings and a new trial is not required.

5. Appellants claim that they were deprived of a fair trial because plaintiff's counsel called, as adverse witnesses, attorneys from the same law firm as appellants' trial counsel. The appellants' law firm had advised Blesi to seek Evans' resignation, had drafted the letter of resignation and the minutes of an informal action of shareholders. The firm continued to represent Blesi throughout the trial. The trial court compelled two members of that firm to testify as to communications between themselves and Blesi on the theory that by representing both the majority shareholder

and the corporation, the lawyers were in a conflict of interest position and had a duty to advise Mr. Evans, the minority shareholder, of their advice regarding corporate matters. Therefore, their conversations with Blesi were not privileged.

█ We agree with the trial court and view with disapproval and some concern the practice of an attorney representing a client at trial, knowing his partners will be called as witnesses, particularly where calling them is not a mere stratagem by opposing counsel to seize unfair advantage.

This was only one among many allegations of improper conduct directed at all counsel in the case. The trial court was in the best position to evaluate the degree to which this affected the proceedings. Taking advantage of the trial court's position to gain insight, we hold that the reduction of punitive damages to one-half was an appropriate means of dealing with any prejudicial effect, and that a new trial is not warranted.

## DECISION

**We affirm** the trial court's determination that Mr. Blesi breached his fiduciary duty to Mr. Evans. Accepting the trial court's view that it was Blesi's intimidating *manner* which constituted the breach of fiduciary duty, these were ultra vires acts, and we order that the $250,000 punitive damage award be entered against Mr. Blesi individually.

**We modify** the order for compensatory damages from $277,000 to $381,136, to be entered jointly and severally, against Mr. Blesi and Blesi-Evans Company.

**We remand** to the trial court for the purpose of setting up a mechanism for a buyout of the corporation with the following directions:

1. That the stock is to be evaluated by one skilled and knowledgeable in evaluating the shares of a closely held corporation, said person to be appointed by the court and paid by the Blesi-Evans Company.

2. After the evaluation, Mr. Blesi will be given the first opportunity to buy out Mr. Evans' shares at the value set for those shares by the court-appointed evalua-

tor. If within one year from the date of this decision, Mr. Blesi has not bought Evans' shares at the price set by the evaluator, Mr. Evans shall then have the opportunity to buy out Mr. Blesi's share at the value set by the evaluator within the year following.

3. We enjoin both Mr. Blesi and Mr. Evans from dissolving or attempting to dissolve the Blesi-Evans Company for a period of two years from the date of this decision or until one of them has bought out the shares of the other.

4. We enjoin both Mr. Blesi and Mr. Evans from entering business as a representative of manufacturers of heating and ventilating equipment in the State of Minnesota for a period of two years from the date of this decision or until one has bought out the shares of the other.

5. We vacate the trial court's order of October 4, 1983, as null and void. The trial court's order of June 30, 1983, remains in effect insofar as it is not inconsistent with this decision.