*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2152
A13-2160**

Samuel Deweese,
Respondent (A13-2152),
Appellant (A13-2160),

vs.

Lakeview Clinic, Ltd.,
Appellant (A13-2152),
Respondent (A13-2160).

**Filed September 8, 2014
Affirmed in part and reversed in part
Kirk, Judge**

Carver County District Court
File No. 10-CV-10-1172

Andrew P. Muller, Muller & Muller, PLLC, Minneapolis, Minnesota; Thomas J. Conley, Law Office of Thomas J. Conley, LLC, Minneapolis, Minnesota; and John A. Klassen, John A. Klassen, PA, Minneapolis, Minnesota (for respondent/appellant Samuel Deweese)

Susan Gaertner, Ashley Bennett Ewald, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, Minnesota (for appellant/respondent Lakeview Clinic, Ltd.)

Considered and decided by Hudson, Presiding Judge; Stauber, Judge; and Kirk, Judge.

**KIRK**, Judge

These consolidated appeals are taken from the district court's entry of judgment following a trial on the claims of respondent and cross-appellant Samuel Deweese, M.D., that arose out of the termination of Dr. Deweese's shareholder and employment relationships with appellant and cross-respondent Lakeview Clinic, Ltd. Lakeview argues that: (1) the evidence was insufficient to support the district court's finding that Lakeview breached its fiduciary duty to Dr. Deweese; (2) the district court erred by denying judgment as a matter of law (JMOL) or a new trial on Dr. Deweese's claim for wrongful termination of his shareholder status; and (3) the jury's damages awards are excessive. Dr. Deweese argues that the district court erred by denying his jury-trial rights on his claims for reprisal and disability discrimination under the Minnesota Human Rights Act (MHRA). We affirm in part and reverse in part.

**FACTS**

In 1989, Dr. Deweese began working as a primary-care physician at Lakeview Clinic, which is a provider of primary and specialty medical care with four locations in the western Twin Cities area. In 1992, Dr. Deweese became a shareholder/owner of Lakeview's limited-liability corporation and Lakeview's building corporation, which is the entity that holds the clinic's real-estate assets. In 1999, Dr. Deweese began working a reduced schedule of three full days per week, in addition to completing hospital rounds and on-call duty.

In April 2007, Dr. Deweese took a medical leave of absence from Lakeview after he became ill while he was on vacation. Dr. Deweese later developed psychiatric symptoms, was diagnosed with bipolar disorder, and remained on medical leave through early 2008. Dr. Deweese met with Lakeview staff on several occasions in the summer and fall of 2007. During those meetings, Dr. Deweese stated that the scope of his work would be limited when he was ready to return to work. Lakeview staff discussed with Dr. Deweese that Lakeview would possibly require him to redeem his shares before he could return to work on a part-time basis.

On January 4, 2008, Dr. Deweese met with Lakeview's administrator and signed documents relinquishing his shares in the limited-liability corporation in exchange for $8,300. Dr. Deweese also redeemed 23 shares in the building corporation, effective January 1, 2008. In exchange, Lakeview agreed to pay him $272,596, to be paid over 15 years. Lakeview's administrator also gave Dr. Deweese a copy of a sample non-shareholder employment agreement for him to review and asked him about his timeline for returning to work. Dr. Deweese indicated that he could return to work on a limited basis as soon as his psychiatrist gave him authorization.

On February 1, Dr. Deweese signed an employment contract with Lakeview to return to work for two half-days per week at a rate of $75 per hour, with no on-call or hospital-round responsibilities. In May, Dr. Deweese received clearance from his psychiatrist to increase his hours, and Lakeview authorized him to begin working three half-days per week. That fall, Dr. Deweese requested that Lakeview increase his compensation and change his schedule to three full days per week, which his psychiatrist

3

had authorized. At a meeting in December, Lakeview's executive committee told Dr. Deweese that it had agreed to increase his hours, although not immediately, as well as his compensation. Dr. Deweese became very upset over Lakeview's denial of his request to immediately increase his hours. In January 2009, Dr. Deweese filed a complaint with the Minnesota Department of Human Rights (MDHR).

In April, Dr. Deweese suffered an exacerbation of his psychiatric condition and symptoms while he was on vacation. Dr. Deweese contacted John Beithon, M.D., the physician at Lakeview who had formerly treated him, and requested that he prescribe him Seroquel, explaining that he could not reach his psychiatrist. Dr. Beithon initially refused to prescribe the medication to Dr. Deweese because he was no longer his patient. But after Dr. Deweese told him that another Lakeview physician had agreed to be his physician, Dr. Beithon agreed to write him a prescription for a small amount of Seroquel. Dr. Beithon later asked the Lakeview physician that Dr. Deweese had named if she had agreed to treat him, and she denied that she had. Dr. Beithon reported the incident to Lakeview's president and medical director because he was concerned about Dr. Deweese's state of mind and the lie he told to induce Dr. Beithon to prescribe the medication.

Lakeview's president immediately called a meeting of the executive committee. The executive committee decided to place Dr. Deweese on paid administrative leave and to require him to complete a fitness-for-duty evaluation. One of the executive committee members called Dr. Deweese the following day and informed him of their decision. Dr. Deweese was unhappy with Lakeview's decision. He asked his psychiatrist to sign a

4

letter to Lakeview that he drafted on April 15 stating that the psychiatrist supported Dr. Deweese's return to work and that Dr. Deweese had complied with his instructions. The psychiatrist's nurse gave the letter to the psychiatrist to review, and the psychiatrist began editing the letter.

On April 22, Dr. Deweese emailed Lakeview's medical director a copy of the letter, as originally drafted, on his psychiatrist's letterhead. The medical director called Dr. Deweese's psychiatrist to ask him about the letter, and the psychiatrist informed him that he had not authored the letter. The psychiatrist faxed a letter to Lakeview stating that he had not written or signed the letter, or authorized Dr. Deweese to place it on his letterhead.

Lakeview's executive committee met to discuss the incident and decided to terminate Dr. Deweese's employment. On April 24, Lakeview's president sent Dr. Deweese a letter stating Lakeview was terminating his employment immediately.

In June, Dr. Deweese submitted a second complaint to the MDHR. After investigating, the MDHR dismissed his complaint in March 2010 because it determined that there was no probable cause to believe that Lakeview engaged in an unfair discriminatory practice. Dr. Deweese appealed the determination, and the MDHR affirmed its determinations and dismissed the complaint.

Dr. Deweese filed a complaint in district court against Lakeview in August 2010. He filed an amended complaint in March 2011, alleging breach of fiduciary duty (count one), wrongful termination/shareholder oppression (count two), fraudulent inducement

5

(count three), breach of contract (count four), and disability discrimination, failure to accommodate, and reprisal under the MHRA (counts five, six, and seven).

The district court held a jury trial in August 2012. At the end of the trial, the district court granted Lakeview's motion for a directed verdict on Dr. Deweese's claim for failure to provide accommodations under the MHRA (count six). The district court submitted the remaining counts alleged in the complaint to the jury, some on an advisory basis only. The jury found that Lakeview breached its fiduciary duty to Dr. Deweese and awarded $1,090,384 in damages. The jury awarded Dr. Deweese $195,000 in damages for wrongful termination. The jury found that Lakeview fraudulently induced Dr. Deweese to redeem his shares in the limited-liability corporation and the building corporation by falsely representing a material fact to him, which he relied upon. The jury did not award any damages for that count. The jury further found that Lakeview had cause to terminate Dr. Deweese's employment and so did not award Dr. Deweese any damages on his breach of contract claim.

Regarding Dr. Deweese's MHRA claims, the jury made advisory findings that Dr. Deweese is disabled and his disability was a motivating factor in Lakeview's decision not to increase his working hours, but his disability was not a motivating factor in Lakeview's decision to terminate his employment. The jury found that Dr. Deweese engaged in activity protected under the MHRA and that this activity was a motivating factor in Lakeview's decision to terminate his employment. But the jury found that Lakeview also had a legitimate nonretaliatory business reason for terminating his employment.

6

The district court adopted the jury's findings in its findings of fact, conclusions of law, and order filed on August 28, and ordered the parties to appear for posttrial proceedings. Dr. Deweese moved for entry of judgment on counts five and seven. Lakeview opposed his motion.

Following a hearing, the district court filed amended and supplemental findings of fact, conclusions of law, order for judgment, and judgment and decree on January 31, 2013. The district court dismissed the remaining MHRA claims.

Both parties filed posttrial motions. Lakeview moved for JMOL, a new trial, and for entry of a remittitur and an offset, and Dr. Deweese moved for amended findings, JMOL, and a new trial. The district court addressed all of the motions in an order filed on September 18. The district court granted Dr. Deweese's motion for amended findings in part and partially granted Lakeview's motion for remittitur on the damages award for count one by subtracting a financial offset, but denied the remaining motions. The district court filed a second amended and supplemental findings of fact, conclusions of law, order for amended judgment, and final judgment and decree, which combined its previous orders, and the court administrator entered the final judgment. This appeal by both Lakeview and Dr. Deweese follows.

**D E C I S I O N**

I. **The evidence is sufficient to support the district court's finding that Lakeview breached its fiduciary duty to Dr. Deweese.**

To establish a claim of breach of fiduciary duty, a plaintiff must demonstrate the existence of a fiduciary duty, breach of that duty, causation, and damages. *See Padco,*

7

*Inc. v. Kinney & Lange*, 444 N.W.2d 889, 891 (Minn. App. 1989) (stating that elements of a breach-of-fiduciary-duty claim are the same as the elements of a negligence claim), *review denied* (Minn. Nov. 15, 1989); *see also Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn. 1982) (stating elements of a negligence claim). The law imposes upon the participants in a fiduciary relationship the "highest standards of integrity and good faith in their dealings with each other." *Pedro v. Pedro*, 489 N.W.2d 798, 801 (Minn. App. 1992) (quotation omitted), *review denied* (Minn. Oct. 20, 1992). In a closely held corporation, shareholders have "a fiduciary duty to deal openly, honestly and fairly with other shareholders." *Evans v. Blesi*, 345 N.W.2d 775, 779 (Minn. App. 1984), *review denied* (Minn. June 12, 1984).

"Whether a fiduciary duty has been breached generally is a question of fact." *Berreman v. West Publ'g Co.*, 615 N.W.2d 362, 367 (Minn. App. 2000), *review denied* (Minn. Sept. 26, 2000). This court will not set aside a district court's findings of fact unless they are clearly erroneous. Minn. R. Civ. P. 52.01. A finding of fact is clearly erroneous if it is "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *N. States Power Co. v. Lyon Food Prods., Inc.*, 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975). Here, the jury made an advisory finding that Lakeview breached a fiduciary duty owed to Dr. Deweese during the time he was a shareholder, and the district court adopted that finding.

**A.     The district court's finding is supported by evidence in the record.**

Our review of the evidence in the light most favorable to the verdict shows that sufficient evidence in the record establishes that Lakeview breached its fiduciary duty to

8

Dr. Deweese by failing to deal openly, honestly, and fairly with him. Dr. Deweese testified that members of Lakeview's executive board told him that he had to relinquish his shareholder status if he wanted to return to work and, if he did so and things went well after he returned to work, he would be able to buy back in as a shareholder. Dr. Deweese testified that he decided to redeem his shares because he relied upon Lakeview's assurances.

Dr. Deweese's testimony is supported by other evidence in the record. In a September 2007 meeting, Lakeview's president told Dr. Deweese that "he is in 'limbo'" and "in effect[] he is not a shareholder any longer and the clinic had the option to begin paying him out after 90 days." During the trial, Lakeview's president acknowledged that at the time of that meeting Dr. Deweese was still a shareholder because he continued to own shares, but he contended that Dr. Deweese was not functioning as a shareholder. Another member of Lakeview's executive committee testified that it would have been incorrect for Lakeview's president to tell Dr. Deweese he was no longer a shareholder at the time of the September 2007 meeting.

Lakeview's administrator testified that he and others at Lakeview told Dr. Deweese that if he redeemed his shares and returned to work at Lakeview, his medical restrictions would be honored. Further, as his medical restrictions decreased and he worked more hours, he would be able to buy back in as a shareholder. Dr. Deweese's wife, who is also a physician and shareholder at Lakeview, testified that she heard the president of Lakeview say that Dr. Deweese could buy back in as a shareholder once he resumed working full-time. But when Dr. Deweese's psychiatrist authorized Dr.

Deweese to increase his hours to three full days per week, Lakeview did not schedule him to work more hours.

Further, the president of Lakeview testified that Dr. Deweese was not functioning as a shareholder because he was not able to perform on-call duties. But there is evidence in the record that Lakeview has allowed shareholders to retain their shareholder rights without performing on-call duties. Lakeview's medical director testified that shareholders who are nearing retirement, or who take a leave of absence for medical reasons or for a fellowship, have been allowed to stop performing on-call duties. Dr. Deweese and his wife also testified that they knew of shareholders who were allowed to take extended leaves of absence for medical reasons.

### B.    Lakeview's arguments fail.

Lakeview argues that Dr. Deweese's claim of breach of fiduciary duty fails as a matter of law for two reasons. First, Lakeview argues that the contracts signed by Lakeview and Dr. Deweese specifically allowed Lakeview to remove Dr. Deweese as a shareholder after an extended disability leave. We disagree.

In relevant part, the stock-redemption agreement for the building corporation provides:

> If a shareholder leaves his or her employment by Lakeview Clinic, Ltd, as a practicing physician . . . either voluntarily, involuntarily, by reason of disability, or for any other reason, Selling Shareholder shall give written notice of such departure to the remaining Shareholders. Selling Shareholder shall be required to sell all stock owned by him or her in the Corporation and the Corporation shall be required to purchase all of such stock at a price per share . . . .

10

The stock-redemption provision for the limited-liability corporation provides, in relevant part:

> Upon the death of any Stockholder, or upon the termination of any Stockholder's employment by Corporation, or the loss of the Stockholder's license to practice medicine in Minnesota, or upon the completion of disability income payments made to a Stockholder (unless such Stockholder accepts a discretionary leave of absence granted at the time by Corporation), the Corporation shall purchase and the estate of the decedent or the Stockholder, as the case may be (the "Seller"), shall sell all of Seller's shares of stock in the Corporation.

The stock-redemption agreements did not allow Lakeview to require Dr. Deweese to redeem his shares at the point in time when Lakeview representatives told him that he was no longer a shareholder. Under the terms of the agreement for the building corporation, Dr. Deweese was not required to redeem his shares until he left his employment. Dr. Deweese was on medical leave from the clinic at the time he redeemed his shares, but had not left his *employment*. And there is conflicting evidence in the record regarding whether shareholders are required to perform on-call and hospital-round duties, in addition to working part-time or full-time, in order to fulfill their duties as shareholders. Similarly, none of the triggering circumstances under the limited-liability corporation agreement had occurred at the time Dr. Deweese redeemed his shares. Dr. Deweese's employment had not been terminated, he still had a license to practice medicine, and Lakeview does not argue that he was no longer receiving disability-insurance payments.

11

Further, the senior-physician agreement that Dr. Deweese signed when he began working at Lakeview states that an employee is entitled to full compensation for the first 90 days if he becomes disabled, but after that time he is not entitled to further compensation until he resumes working. It also states, in pertinent part, that the employment agreement continues until the "[e]mployee is absent from work for more than 30 days in any fiscal year excluding absence by reason of approved vacation, illness or absences during a leave of absence granted by the" board of directors. There is no evidence in the record that Dr. Deweese's medical leave from Lakeview was unapproved. Instead, the evidence shows that his leave continued with Lakeview's knowledge and agreement. Thus, Lakeview could have stopped paying Dr. Deweese after he had been on disability leave for 90 days, but it could not terminate his employment.

Lakeview next argues that the definition of fiduciary duty provided in the jury instructions substantially prejudiced the jury. "The district court has broad discretion in determining jury instructions and [appellate courts] will not reverse in the absence of abuse of discretion." *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 (Minn. 2002). An instruction is reversible error if it is so misleading that it renders the jury instructions as a whole incorrect, but this court will not reverse based on a single sentence or word that is lifted from its context. *Id.* An appellant is not entitled to a new trial if the "instructions overall fairly and correctly state the applicable law." *Id.*

Here, the district court instructed the jury that "shareholders in a closely held business owe a special duty to one another, called a fiduciary duty. This duty requires shareholders to engage in loyalty, good faith and fair dealings with one another." The

12

district court then instructed the jury on each element of a breach-of-fiduciary-duty claim, including that Dr. Deweese had the burden to prove that "Lakeview Clinic breached its fiduciary duty to Dr. Deweese." Lakeview contends that the district court erred by denying its request to define Dr. Deweese's burden of proof as follows: "Lakeview Clinic breached its fiduciary duty to Dr. Deweese by frustrating Dr. Deweese's reasonable expectations of good faith and fair dealing."

We disagree. The common law fiduciary duty between shareholders is frequently defined in caselaw as a "duty of good faith and fair dealing." *See Gunderson v. Alliance of Computer Prof'ls, Inc.*, 628 N.W.2d 173, 185 (Minn. App. 2001), *review granted* (Minn. July 24, 2001), *and appeal dismissed* (Minn. Aug. 17, 2001); *Pedro*, 489 N.W.2d at 801 ("In a fiduciary relationship the law imposes upon them highest standards of integrity and good faith in their dealings with each other"); *Evans*, 345 N.W.2d at 779 (stating that "a shareholder in a closely held corporation has a fiduciary duty to deal openly, honestly and fairly with other shareholders"); *see also Fewell v. Tappan*, 223 Minn. 483, 494, 27 N.W.2d 648, 654 (1947) (defining a fiduciary relationship as one that imposes "the highest standard of integrity and good faith in their dealings with each other"). Thus, the district court's definition of a fiduciary duty in a closely held corporation as one requiring "shareholders to engage in loyalty, good faith and fair dealings with one another" was an accurate statement of the law.

**II.    The district court did not err by denying JMOL or a new trial on Dr. Deweese's claim for wrongful termination of his shareholder status.**

Lakeview argues that the district court erred by denying JMOL or a new trial on Dr. Deweese's claim for wrongful termination of his shareholder status. A district court should only grant JMOL in cases "where (1) in the light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or where (2) it would be contrary to the law applicable to the case." *Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 816 (Minn. 2006) (quotation omitted). "Viewing the evidence in a light most favorable to the nonmoving party, this court makes an independent determination of whether there is sufficient evidence to present an issue of fact for the jury." *Id.*

Lakeview first contends that Dr. Deweese's claim that his shareholder status was wrongfully terminated is barred by his written agreement to sell his shares. Lakeview argues that Dr. Deweese did not sign the agreements to sell his shares under duress because Lakeview had the legal right to buy back his shares after his 90-day disability leave was over. "The mere threat to withhold from a party a legal right, which he has an adequate remedy to enforce, is not, in the eye of the law, duress; certainly not such as will avoid the execution of a contract." *Lunning v. Land O'Lakes*, 303 N.W.2d 452, 460 (Minn. 1980) (quotation omitted). "As a rule, duress will not prevail to invalidate a contract entered into with full knowledge of all the facts, with ample time and opportunity for investigation, consideration, consultation and reflection." *Am. Nat'l Bank of Lake Crystal v. Helling*, 161 Minn. 504, 511, 202 N.W. 20, 23 (1925).

Here, the jury found that Lakeview improperly induced Dr. Deweese to redeem his shares, and the evidence in the record shows that Lakeview's executives did not act openly, honestly, and fairly when they told Dr. Deweese that he was no longer a shareholder and was required to redeem his shares before he could return to work. The supreme court has previously upheld shareholder oppression claims even when the plaintiff consented on paper. *See Fewell*, 223 Minn. at 490-94, 27 N.W.2d at 652-54 (concluding that the defendant did not act in good faith and misrepresented the facts when he convinced plaintiff to sign an agreement to sell his stock to him); *Evans*, 345 N.W.2d at 778-80 (affirming the district court's finding that appellant breached a fiduciary duty to respondent when he obtained respondent's signature on a stock transfer and letter of resignation by misrepresentation, intimidation, threat, and duress). We conclude that Dr. Deweese did not validly consent to redeem his shares when he signed the paperwork without knowledge of all of the facts and time for investigation and consideration. *See id.*

Lakeview next argues that the plain language of the stock-redemption agreements allowed it to require Dr. Deweese to redeem his shares. We disagree. Dr. Deweese was on medical leave at the time he agreed to redeem his shares, but he was still employed by Lakeview. The plain language of the stock-redemption agreements does not allow Lakeview to require a shareholder to redeem his shares when he is still an employee.

Finally, Lakeview contends that Dr. Deweese ratified the redemption of his shares by signing the paperwork to redeem his shares and accepting payment from Lakeview.

15

We decline to address this argument because it was not raised to and decided by the district court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

### III.    We reverse the jury's damages awards in part and affirm in part.

The question of damages is a question of fact for the jury. *Pulkrabek v. Johnson*, 418 N.W.2d 514, 516 (Minn. App. 1988), *review denied* (Minn. May 4, 1988). "The jury's decision is entitled to wide deference as long as it is within the range of reasonable awards." *Id.* "[T]he jury may not base an award of substantial damages on speculation and conjecture." *Ahrenholz v. Hennepin Cnty.*, 295 N.W.2d 645, 649 (Minn. 1980).

### A.    The district court did not abuse its discretion by denying remittitur on the jury's damages award for the breach-of-fiduciary-duty claim.

Lakeview argues that the district court abused its discretion by denying its motion for remittitur on its breach-of-fiduciary-duty claim. The district court may grant remittitur "on the ground that an excessive verdict appears to have been given under the influence of passion and prejudice or on the ground that the damages are not justified by the evidence." *Kwapien v. Starr*, 400 N.W.2d 179, 184 (Minn. App. 1987). We review a district court's decision whether to grant remittitur for a clear abuse of discretion. *Id.*

Here, the jury found that $1,090,384 would fairly and adequately compensate Dr. Deweese for any damages directly caused by the termination of his shareholder status in 2008. The district court adopted the jury's finding and awarded judgment to Dr. Deweese in the amount of $1,090,384, less any amount Lakeview previously paid to Dr. Deweese for the induced redemption of his shares. Lakeview later moved for remittitur and Dr. Deweese moved for amended findings. The district court granted Dr. Deweese's

16

motion for amended findings in part and subtracted a financial offset from the $1,090,384 damages award. The district court otherwise denied Lakeview's motion for remittitur without explanation.

Lakeview contends that the jury's damages award for the breach-of-fiduciary-duty claim was unsupported by the evidence, excessive, and the result of the jury's passion or prejudice. Lakeview argues that the proper measure of damages was the increase in the value of Dr. Deweese's stock between the date when Dr. Deweese redeemed his shares and the date that Lakeview terminated his employment. Lakeview argues that the evidence establishes that his shares would only have increased approximately $26,000 to $27,000 during that 15-month period. In response, Dr. Deweese argues that the jury reasonably considered the financial position he would have been in had Lakeview not breached its fiduciary duty to him.

Lakeview's president testified that at the time Dr. Deweese bought shares in the clinic in 1992, the shares were worth approximately $1,500 each. Evidence in the record establishes that Lakeview paid Dr. Deweese $272,596 for his 23 shares of stock in the building corporation on January 1, 2008, which equates to approximately $11,852 per share.[1] Lakeview's president and administrator both testified that each share is currently worth more than $13,000. Dr. Deweese's counsel asked Lakeview's administrator if the share price of Lakeview's shares had increased by approximately 40% per year since 1992, and the administrator testified that he did not know, but he would not be surprised

---

[1] Lakeview also paid Dr. Deweese $8,318 for shares in the limited-liability corporation, but there is no evidence in the record, nor does he argue, that those shares have appreciated in value.

17

if it had.  Lakeview's administrator further testified that several physicians have worked at Lakeview until they are in their 70s.

Dr. Deweese testified that he planned to work at Lakeview for the rest of his career.  Dr. Deweese's testimony and other evidence in the record establishes that he paid approximately $93,000 to purchase 60 shares of stock in the building corporation in 1992, which was later adjusted to 23 shares for accounting reasons.  The record establishes that Dr. Deweese was 52 years old at the time he redeemed his shares in 2008.  The district court admitted into evidence an opinion from an expert who analyzed the wages that Dr. Deweese lost as a result of redeeming his shares.  Using an expected retirement age of 67, the expert calculated that Dr. Deweese lost expected earnings of $3,856,606.

Based on this evidence, the jury could have awarded damages to Dr. Deweese on his breach-of-fiduciary-duty claim for only the 15-month time period between when he redeemed his shares and when Lakeview terminated his employment.  Under the shareholder agreements, Dr. Deweese would have been required to redeem his shares upon the termination of his employment.  We are unpersuaded by Dr. Deweese's argument that the terms of these agreements require unanimous agreement by the shareholders before a shareholder who has been terminated from employment can redeem his shares.  The senior-physician agreement states that the employment agreement continues until "employment is terminated by Corporation for good cause as determined in good faith by Corporation's Board of Directors."  The bylaws provide that the

management of the corporation is vested in the board of directors, which consists of six directors, not all of the shareholders.

But the jury's verdict indicates that the jury considered a longer time period during which Dr. Deweese would have held his shares. Based on the evidence, the jury could have reasonably concluded that Lakeview would not have terminated Dr. Deweese's employment in April 2009 if he had remained a shareholder, and calculated damages based on his expected retirement date. Because we conclude that the jury's damages award was within the range of reasonable awards, we defer to the jury's finding. *See Pulkrabek*, 418 N.W.2d at 516. Therefore, the district court did not abuse its discretion by denying remittitur on the jury's damages award for the breach-of-fiduciary-duty claim.

**B. The district court erred when it failed to offset the jury's wrongful-termination damages award by disability-insurance payments made to Dr. Deweese.**

Lakeview argues that the district court erred by failing to offset the jury's award of $195,000 for the wrongful termination/shareholder oppression claim by $155,340.60 in disability-insurance payments that Dr. Deweese received between January 1, 2008, and April 24, 2009. We agree.

Under Minn. Stat. § 548.251, subd. 2 (2012), in a civil action where damages include an award to compensate the plaintiff for losses available by collateral sources, a party may move for a determination of the collateral sources and submit written evidence of those sources. The definition of "collateral sources" includes "payments related to the injury or disability in question made to the plaintiff . . . up to the date of the verdict" by "a contractual or voluntary wage continuation plan provided by employers . . . intended

19

to provide wages during a period of disability, except benefits received from a private disability insurance policy where the premiums were wholly paid for by the plaintiff." Minn. Stat. § 548.251, subd. 1(4) (2012). Once the district court determines the "amounts of collateral sources that have been paid for the benefit of the plaintiff," the district court "shall reduce the award by the amounts determined." *Id.*, subds. 2(1), 3(a) (2012). This court reviews issues of statutory interpretation de novo. *Krueger v. Zeman Constr. Co.*, 781 N.W.2d 858, 861 (Minn. 2010).

In its order adopting the jury's special verdict, the district court specifically noted that the disability-insurance payments that Dr. Deweese received "must be accounted for as an offset to any wage loss awarded by the jury," and noted that "[t]he amount of such payments is subject to calculation by counsel, who were instructed by this [c]ourt to do so following receipt of the jury verdict. That issue . . . must be in the subject of post-verdict proceedings." In its posttrial motion, Lakeview moved for an order offsetting the wrongful termination/shareholder oppression damages by the amount of disability-insurance payments Dr. Deweese received between the time he redeemed his shares and the time Lakeview terminated his employment. Lakeview calculated the amount of disability-insurance payments that Dr. Deweese received to be $155,340.60, and submitted supporting documentation. The district court denied the motion without discussing the offset request.

We conclude that the disability-insurance payments that Dr. Deweese received up to the date of the jury's special verdict are a "collateral source" under Minn. Stat. § 548.251. It is undisputed that Dr. Deweese received disability-insurance payments

20

while he was on medical leave from Lakeview, and Lakeview's administrator testified at trial that Lakeview pays the disability policy premiums for its physicians. Lakeview properly moved the district court to reduce the jury's award of damages by the amount of the collateral source, and submitted supporting evidence. Once presented with that evidence, the district court was required to determine the amount of the collateral source that Dr. Deweese received, and then to reduce the award by that amount. *See* Minn. Stat. § 548.251, subd. 2(1). Therefore, the district court erred by failing to do so.

In response to Lakeview's argument, Dr. Deweese argues that the statutory offset for disability-insurance payments only applies to personal-injury cases. He contends that under the common law collateral-source doctrine, he can recover damages for lost wages even if it results in a double recovery. In support of his argument, Dr. Deweese cites *Duluth Steam Coop. Ass'n v. Ringsred*, 519 N.W.2d 215, 217 (Minn. App. 1994), where this court stated that "the statutory collateral source rule applies only to cases involving physical injury to the person." Because *Ringsred* involved property damage, this court applied the common law collateral-source rule rather than the statutory collateral-source rule. *Ringsred*, 519 N.W.2d at 217. But Minn. Stat. § 548.251, subd. 2, specifically states that it applies to "a civil action, *whether based on contract or tort*." (Emphasis added.) Under the plain language of Minn. Stat. § 548.251, the district court was required to reduce the jury's wrongful termination/shareholder oppression damages award by the amount of the disability-insurance payments that Dr. Deweese received.

Accordingly, we affirm the district court's denial of remittitur on the jury's damages award for the breach-of-fiduciary-duty claim, but reverse the jury's award on

21

the wrongful termination/shareholder oppression claim and remand to the district court to deduct from that award the disability-insurance payments Dr. Deweese received.

**IV.  Dr. Deweese waived his argument that the district court violated his jury-trial rights on his MHRA claims.**

Dr. Deweese argues that the district court denied his right to have a jury decide his claims of reprisal and disability discrimination under the MHRA when it did not adopt the jury's special verdict regarding these issues.  Because the jury already determined the issue of liability in its special verdict, he argues that he is entitled to a new jury trial on the issue of damages only.  In response, Lakeview argues that Dr. Deweese waived this argument because he raised it for the first time in his motion for amended findings, JMOL, or a new trial.  In general, a party may not raise an issue for the first time in a motion for a new trial or amended findings.  *Allen v. Central Motors, Inc.*, 204 Minn. 295, 295, 283 N.W. 490, 490 (1939) (stating that an issue is raised "too late" when it is raised for the first time in a motion for amended findings); *Ellingson v. Burlington N. R.R. Co.*, 412 N.W.2d 401, 405 (Minn. App. 1987) (stating that "having failed to object properly at trial, plaintiffs may not enlarge their objection for the first time either upon a motion for a new trial . . . or upon appeal" (quotation omitted) (alteration in original)), *review denied* (Minn. Nov. 13, 1987).

Here, the district court held a jury trial in August 2012, and the district court filed its order adopting the jury's special verdict in its findings of fact shortly afterward.  But Dr. Deweese did not raise this issue until he filed his motion for amended findings, JMOL, and a new trial on May 30, 2013.  Following a hearing addressing both parties'

22

posttrial motions, the district court denied Dr. Deweese's motion without discussing his claim that he was entitled to a jury trial on his MHRA claims. Dr. Deweese raised this issue "too late" because it was raised for the first time in Dr. Deweese's motion for amended findings, JMOL, or a new trial. *See Ellingson*, 412 N.W.2d at 405. Therefore, we decline to consider this issue.

**Affirmed in part and reversed in part.**