*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0538**

In the Matter of:

Anthony Michael Webster, II On Behalf of Minor Child(ren), petitioner,
Appellant,

vs.

Sefaint Atkins,
Respondent.

**Filed November 17, 2025**
**Affirmed**
**Schmidt, Judge**

Hennepin County District Court
File No. 27-DA-FA-25-1065

Anthony Michael Webster, II, St. Louis Park, Minnesota (pro se appellant)

Jennifer J. Grembowski, Jessica Wengronowitz, Rogness & Field, P.A., Oakdale,
Minnesota (for respondent)

Considered and decided by Bratvold, Presiding Judge; Schmidt, Judge; and Smith,

John, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**SCHMIDT**, Judge

Appellant Anthony Michael Webster II filed a petition for an order for protection (OFP) on behalf of his minor child, M.W., against respondent Sefanit Adkins,[1] M.W.'s aunt. The district court dismissed the petition. On appeal, Webster argues that the district court (1) erred in failing to remove the judge; (2) abused its discretion by denying his request for a continuance and in its evidentiary rulings; (3) erred in its credibility findings; and (4) clearly erred by finding that no domestic abuse occurred. We affirm.

## FACTS

The Minnesota Domestic Abuse Act authorizes a district court to issue an OFP to protect victims of domestic abuse. Minn. Stat. § 518B.01 (2024). A party petitioning for an OFP must prove that the respondent has committed "domestic abuse." *Id.*; *Butler v. Jakes*, 977 N.W.2d 867, 871 (Minn. App. 2022). The Act defines "[d]omestic abuse" as including "physical harm, bodily injury, or assault" that is "committed against a family or household member." Minn. Stat. § 518B.01, subd. 2(a).

On behalf of M.W., Webster filed a petition for an OFP against Adkins. The petition alleged that Adkins committed domestic abuse based, in part, on a scratch on M.W.'s wrist sustained while in Adkins' care. The district court denied Webster's request for ex parte relief and scheduled an evidentiary hearing.

---

[1] The caption in the district court file lists respondent as "Sefaint Atkins." But respondent's testimony, as well as her appellate brief, indicate that her name is spelled "Sefanit Adkins." The rules require the caption of this opinion to conform to the district court's caption (Minn. R. Civ. App. P. 143.01), but we use the correct spelling in the body of this opinion.

Webster filed an amended petition for an OFP, again requesting ex parte relief. The district court again denied Webster's request for ex parte relief.

Webster then filed a notice to remove the district court judge for bias. Webster's notice cited statements that the judge made during Webster's separate divorce case. Court administration informed Webster that his motion was untimely.

Six days before the evidentiary hearing, Webster's attorney withdrew from representation. Webster requested a continuance to allow him time to hire new counsel. The district court proceeded with the evidentiary hearing as scheduled without explicitly addressing Webster's continuance request.

At the evidentiary hearing, the district court heard testimony from Adkins, Webster, M.W.'s mother, and the urgent care doctor who examined M.W.'s scratch. Adkins requested to call a child protection services worker as a witness, but the district court denied her request. The court accepted several exhibits into evidence, including: a police report; a record from an urgent care visit; and two videos of M.W. recorded shortly after he sustained the scratch on his wrist.

The district court dismissed Webster's petition, finding that Adkins' testimony was credible and that M.W.'s scratch was not the result of domestic abuse. Webster appeals the district court's order dismissing his petition for an OFP.

After the district court dismissed his petition, Webster filed another notice to remove the judge. After he filed a notice of appeal, Webster filed pleadings in the district court related to his second notice for removal. A second district court judge presided over Webster's notices to remove the original judge, held a hearing, and denied his motion.

**DECISION**

**I.    The district court did not err when it implicitly denied Webster's initial notice to remove the original judge by not explicitly addressing the notice.**

Webster first argues that the district court erred by failing to explicitly rule on his first notice to remove the original district court judge. We disagree.

There are two mechanisms by which a party may seek to remove a judge from presiding over a case. The first is a peremptory removal, which allows a party to remove the judge once as a matter of right within ten days of receiving notice of the judge's assignment to the case. Minn. R. Civ. P. 63.03; Minn. Stat. § 542.16, subd. 1 (2024). The second is removal for cause, which requires the party seeking removal to make an "affirmative showing that the judge . . . is disqualified under the Code of Judicial Conduct." Minn. R. Civ. P. 63.02, .03; Minn. Stat. § 542.16, subd. 2 (2024). A party may move for a judge's removal for cause at any time. Minn. R. Civ. P. 63.03.

Court administration treated Webster's notice to remove as a notice for a peremptory removal and informed Webster that his notice was untimely. But Webster filed a notice to remove for cause, which can be raised at any time. *See* Minn. R. Civ. P. 63.03. A judge subject to a removal notice must address the notice "in the first instance." Minn. Gen. R. Prac. 106. The original district court judge did not rule on Webster's removal notice. Although the optimal practice is to address a notice for removal explicitly, when a district court does not explicitly address a motion, we treat the court's silence as an implicit denial. *Palladium Holdings, LLC v. Zuni Mortg. Loan Trust 2006-OA1*, 775 N.W.2d 168, 177-78 (Minn. App. 2009), *rev. denied* (Minn. Jan. 27, 2010).

4

Even if the judge's failure to explicitly address the motion constituted an error, any error would be harmless. After a judge denies a motion for removal for cause, the party seeking removal can request that the Chief Judge, or their designee, reconsider the denial. Minn. Gen. R. Prac. 106. Here, Webster filed additional pleadings to remove the original judge, which were heard by the Chief Judge's designee. The designee judge denied Webster's motion, determining that Webster failed to show that the original judge demonstrated bias that would disqualify him from presiding over the OFP matter under the Code of Judicial Conduct. Although Webster filed the additional pleadings related to his removal notice *after* he filed the notice of appeal, we recognize that the district court would conduct the same analysis if we were to remand. *See Evans v. Blesi*, 345 N.W.2d 775, 780 (Minn. App. 1984) ("taking cognizance of" the district court's action attempting to reduce damages after appeal commenced "for the insight it affords" and ordering a reduction in damages), *rev. denied* (Minn. June 12, 1984); *see also Grein v. Grein*, 364 N.W.2d 383, 387 (Minn. 1985) (affirming district court where—from the files, record, and court's findings, the court on remand "would undoubtedly" reach the same result). A remand would result in the designee judge issuing the same order, which concluded that the original judge did not violate the Code of Judicial Conduct.[2]

---

[2] Webster also argues that the district court violated his due process right to an impartial tribunal. We disagree. The Due Process Clause entitles a person to "an impartial and disinterested tribunal in both civil and criminal cases." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). A violation of the Due Process Clause due to lack of an impartial tribunal is reserved for "extreme facts." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 886-88 (2009). In support of his due-process argument, Webster cites only the exchange between himself and the original district court judge in the divorce proceeding. The transcript of that exchange is not part of the record before us in this appeal. Minn. Civ. App. P. 110.01.

**II.** **The district court did not abuse its discretion by denying a continuance, in making evidentiary rulings, or err in its credibility determination.**

Webster argues that the district court abused its discretion by denying him a continuance and making evidentiary rulings. Webster also argues that the district court erred in finding Adkins' testimony to be credible. We address each argument in turn.

**A.** **The court did not abuse its discretion by denying a continuance.**

The district court held an initial hearing on Webster's OFP petition. Adkins denied Webster's allegations and requested an evidentiary hearing. Six days before the hearing, Adkins filed a letter asking the court to deny Webster's request to continue the hearing. The district court issued an order stating that no request for a continuance had been filed and that the evidentiary hearing remained as scheduled. That same morning, Webster's attorney withdrew from representation and Webster filed a request for a continuance so he could hire new counsel.[3] The district court did not expressly rule on Webster's request. But the court effectively denied the request when it proceeded with the evidentiary hearing.

For purposes of this appeal, we assume—without deciding—that Webster's request for a continuance was properly before the district court despite the fact that Webster's request for the continuance did not satisfy the requirements of a motion for the relief he sought. Whether to grant a continuance is within the discretion of the district court.

---

We, therefore, decline to consider it. *Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn. 1988) (noting appellate courts cannot consider facts outside the record); *see* Minn. R. Civ. App. P. 110.01 (defining the record on appeal).

[3] Webster titled his request a "Motion for Continuance." But his request did not meet the requirements under the rules for a motion, thus the district court did not treat it as such.

6

*Dunshee v. Douglas*, 255 N.W.2d 42, 45 (Minn. 1977). We will not reverse a district court's denial of a continuance "absent a showing of clear abuse of discretion." *Id.* "The test is whether a denial prejudices the outcome of the [proceeding]." *Chahla v. City of St. Paul*, 507 N.W.2d 29, 32 (Minn. App. 1993), *rev. denied* (Minn. Dec. 14, 1993).

The district court acted within its discretion when it implicitly denied Webster's request and proceeded with the evidentiary hearing. On appeal, Webster does not explain how the denial of his request for a continuance prejudiced the outcome of the proceedings. Webster had over one month—during which time he was represented by two attorneys— to prepare for the evidentiary hearing. The record also reflects that a continuance would have resulted in hardship to Adkins because she had already subpoenaed several witnesses to appear at the hearing and booked her travel to attend the hearing in Minnesota.

In addition, Webster had no absolute right to a continuance to hire counsel. Webster's citation to the Sixth Amendment is unhelpful because the right to counsel applies only in criminal matters. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."); *see also* Minn. Const. art. I, § 6 ("In all criminal prosecutions the accused shall enjoy the right to . . . have the assistance of counsel in his defense.").

Given these circumstances, we conclude that the district court did not abuse its discretion in implicitly denying Webster's request for a continuance.

**B.** **Webster forfeited the argument regarding his request to call a child protection services worker as a witness.**

Webster argues that the district court abused its discretion by preventing him from calling a child protection services worker as a witness at the evidentiary hearing. But the record reflects that Adkins sought to call the worker as a witness. The district court denied Adkins' request, ruling that the testimony would be needlessly cumulative. Webster did not object or otherwise ask to call the worker as a witness. Because Webster did not object or affirmatively seek to call the worker as a witness, he forfeited this argument.

**C.** **The district court did not abuse its discretion by excluding a video.**

Webster argues that the district court abused its discretion by excluding a video that allegedly shows M.W.'s injuries and demeanor after an alleged incident of abuse. But the record reflects that Webster never offered the video into evidence and that the district court never ruled to exclude the exhibit. Because the district court was never asked to rule on the video's admissibility, Webster's argument fails.

**D.** **The district court did not err by finding Adkins credible.**

Webster argues that the district court erred by finding that Adkins' testimony was credible without explanation. Credibility determinations are exclusively the province of the fact-finder. *State v. McCray*, 753 N.W.2d 746, 754 (Minn. 2008). There is no requirement that the district court provide an explanation for its credibility determinations. *See, e.g.*, *Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn. App. 2009) (affirming the district court's implicit credibility determination). There is nothing in the record that undermines the district court's assessment of Adkins' credibility.

**III.      The district court did not clearly err in finding no domestic abuse occurred.**

Webster argues that the district court clearly erred by finding that M.W.'s scratch was not the result of domestic abuse. We disagree.

We review findings of fact for clear error. *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021). "[W]e view the evidence in the light most favorable to the district court's findings" and reverse only when "left with the definite and firm conviction that a mistake has been made." *Butler*, 977 N.W.2d at 871 (quotation omitted).

Our thorough review of the record reveals considerable evidence that reasonably supports the district court's finding that the scratch on M.W.'s wrist did not result from domestic abuse. Adkins testified that M.W. sustained the scratch on his wrist while they were play-wrestling. She testified that she cleaned and bandaged the scratch. The district court found Adkins' testimony to be credible, which is exclusively the district court's prerogative. *See Corwin v. Corwin*, 366 N.W.2d 321, 325 (Minn. App. 1985) (explaining that "the [district] court is uniquely situated to determine the truthfulness of a witness").

Besides Adkins' testimony, the record contains additional evidence that supports the district court's finding. M.W.'s mother testified that M.W. enjoys play-wrestling and that Adkins told her that M.W. sustained the scratch while play-wrestling. The doctor who saw M.W. for the scratch testified that he treated the scratch with a band-aid. Given this evidence, the district court's finding that M.W.'s scratch did not result from domestic abuse is not clearly erroneous.

**Affirmed.**